*122
 
 Bell, J.
 

 The parties agreed in open court that the ruling on the demurrer should be dispositive of this case.
 

 The single question presented is whether relator has alleged facts sufficient to constitute a cause of action. The answer to this question must be determined from a consideration and interpretation of certain language used in the General Appropriation Act of the 95th General Assembly, known and designated as House Bill No. 227, relative to salary and wage adjustments.
 

 The language with which we are concerned is as follows:
 

 “Salary and Wage Adjustment
 

 ‘ ‘ 1943 1944 Biennium
 

 “Salary and Wage
 

 Adjustment .... $2,817,500 $2,817,500 $5,635,000
 

 “The foregoing appropriation shall be distributed to the various offices, departments, boards and commissions to which- appropriations are herein made for salaries and wages, whether contained in appropriations for ‘personal service’ or appropriations for ‘maintenance.’ Such distribution shall be made on order of the controlling board and the amounts distributed shall be used only to augment the items within ‘personal service’ and ‘maintenance’ to the end that said items will be sufficient for the year 1943 and for the year 1944 to permit an increase of 10% in all salaries and wages of less than $2,000 annually. Upon such distribution by order of the controlling board, the salaries and wages of all employees, within such offices, departments, boards and commissions, which are now less than $2,000 annually, shall be increased 10% unless such increase of 10% would result in a salary or wage in excess of $2,000 annually, in which event such salary or wage shall be increased only to the sum of $2,000 annually.
 

 “Provided, however, upon request of the heads of
 
 *123
 
 the various offices, departments, boards and commissions, and with the approval of the controlling board, all employees receiving more than $1,800 per annum may be given a temporary increase for the years 1943 and 1944 of not to exceed $180 per annum. The controlling board may authorize all or a portion of such temporary increase applying to employees receiving $3,000 per annum or less, to be paid from the foregoing salary and wage adjustment appropriation to the extent appropriations for ‘personal service’ and ‘maintenance’ are not sufficient for such purpose. The increase herein authorized shall not apply to the members of boards serving part time on a per diem basis. ’ ’
 

 By this provision state employees who earn not to exceed $3,000 per annum are divided into two groups or classes: First,
 
 all
 
 employees who earn less than $2,000 per annum, are granted a mandatory 10% increase in salary or wages; second,
 
 all
 
 employees who earn more than $1,800 per annum are granted an increase in compensation of 10%, subject to the condition that the head of the department requests and the controlling board approves such increases. As to the second class the provision is permissive.
 

 Relator is employed in the Department of Highways, Division III, Lorain county, at a salary of $2,160 per annum and belongs in the latter class.
 

 It is his claim that all employees in the Department of Highways, Division III, except relator, who earned more than $1,800 per annum have been granted an increase of $180 per annum, effective as of January 1, 1943, and that by reason of the language employed therein he is entitled to such increase.
 

 Respondent claims that as to those employees who earn more than $1,800 per annum, he is granted discretion to grant an increase to one or more of such employees and to refuse to grant an increase to others within that class.
 

 
 *124
 
 'These conflicting claims squarely present the question as to the proper construction and interpretation of the quoted language of the act.
 

 The polestar of construction and interpretation of statutory language is legislative intention. In determining that intention courts look to the language employed and to the purpose to be accomplished.
 

 In that portion of the act here under consideration it is significant to note that as to both classes of employees the General Assembly has used the words
 
 all employees.
 

 There can be no controversy upon the proposition that the salary and wage adjustment feature of this act was passed by the General Assembly to relieve, in part at least, employees of the state government m the lower income brackets from the economic pressure caused by the staggering increase in the cost of living.
 

 It is also a matter of common knowledge that private industry is paying much higher compensation to employees for comparable services than is being paid to public employees, and it is reasonably certain that the General Assembly had in mind also that situation when this act was passed.
 

 No one who reads the act would have the temerity to assert that the granted or permissive increases were based upon merit and fitness or upon the records of efficiency of the individual employee. Clearly the General Assembly was attempting to accomplish a two-fold purpose, to assist
 
 all
 
 employees within the compensation range of $3,000 or less per annum and to prevent state employees from seeking employment at higher salaries in private industry.
 

 As to employees who earned more than $1,800 per annum, the head of each department of the state government is vested with discretion to determine and grant to or withhold from
 
 all
 
 employees within such class, wage or salary increases, but he is not vested
 
 *125
 
 with discretion to grant increases to individual employees and withhold such increases from others in the same class. His discretion is limited to consideration of
 
 all
 
 employees as a class and not as individual employees.
 

 It must be presumed that the General Assembly, in the use of the language employed in House Bill No. 227, had in mind that part of the employees affected thereby were in the classified civil service, and intended that the act should be given a construction consistent with the Civil Service Code.
 

 The petition in the instant case alleges that relator was appointed to his position as a rodman after certification therefor by the state Civil Service Commission. Therefore we are dealing with the rights of an employee in the classified service of the state.
 

 The Constitution (Section 10, Article XY) makes mándatory the passage of laws to enforce civil service in the state, the counties and the cities.
 

 In pursuance thereof the General Assembly passed a Civil Service Code (Sections 486-la to 486-31, both inclusive, General Code).
 

 This code, speaking generally, makes provision for examinations and appointments,
 
 classification
 
 of offices, positions and employments, promotions, tenure, transfers, reinstatements, specifically sets forth the causes for suspension and removal and provides the procedure to be followed in such cases.
 

 Section 486-17, General Code, provides in part as follows:
 

 “No person shall be reduced in pay or position, laid off, suspended, discharged or
 
 otherwise discriminated against
 
 by an appointing officer for religious or political reasons or affiliations.” (Italics ours.)
 

 It is further alleged in the petition “that the refusal of the respondent to grant said salary increase to bim is a result of discrimination against relator for politi
 
 *126
 
 cal reasons and because of relator’s political affiliations. ’ ’
 

 Tbe demurrer admits the truth of all allegations of fact well pleaded and therefore these allegations must be considered as true for the purposes of our decision.
 

 To sustain the position of respondent would require the court to sanction the admitted violation of the provision of the Civil Service Code (Section 486-17, General Code) and would require us to hold that the head of any department, at his discretion, could construe the words
 
 all employees
 
 as used in the -act to mean
 
 any employee.
 

 Such a construction would place in the hands of the head of a department authority to discriminate among employees in the same civil service classification.
 

 In our opinion such a construction is not warranted by either the language used in the act or by the legislative intention. By construing the words
 
 all employees
 
 in their plain and ordinarily accepted meaning, the act is consistent with the provisions of the Civil Service Code, prevents any discrimination among employees in the same civil service classification and conforms to the expressed legislative intention. Obviously this construction should be adopted.
 

 It follows that the demurrer should be and hereby is overruled and the writ is allowed.
 

 Writ allowed.
 

 Wbygandt, C. J., Matthias, Hart, Zimmerman, Williams and Turner, JJ., concur.