WHISTON et al., Appellants,

v.

BIO–LAB, INC. et al., Appellees.

[Cite as *Whiston v. Bio–Lab, Inc.* (1993), 85 Ohio App.3d 300.]

Court of Appeals of Ohio,
Summit County.

No. 15551.

Decided March 3, 1993.

*Jack Morrison, Jr.* and *James King,* for appellants.

*Robert Blackman* and *Dale Markworth; Jeffrey Van Wagner; Charles T. Riehl* and *Jonathan D. Greenberg;* and *Mary Jones,* Assistant Summit County Prosecuting Attorney, for appellees.

REECE, Judge.

Plaintiffs-appellants, Robert and Sandra Whiston, commenced this lawsuit on August 10, 1989. They allege that Robert, while working as a medical technician for the Green Township Fire Department, was exposed to chlorine gas, resulting in permanent injuries. As amended on September 1, 1989, the complaint named eighteen identified and numerous unknown defendants, asserting causes of action sounding in negligence, strict liability, product liability, and a derivative claim for loss of consortium.

## Facts

The incident giving rise to this lawsuit occurred on August 12, 1988, at the Holiday Inn–South Akron, a hotel located in Green Township. On that morning, Willie Threatt, the hotel's maintenance supervisor, detected chlorine gas emitting from the pump house adjacent to the hotel's swimming pool. Located in the pump house is the pump, filter, heater and two automatic chlorinators which service the swimming pool. The automatic chlorinators consist of two plastic housings with water lines connected to the pump. Two plastic, cylindrical canisters, containing pellets of trichloro-s-triazinetrione ("trichloro"), a chlorine compound, are inserted into each housing. On opposite sides of the canisters are calibrated indentations which are punched out before insertion. As water is pumped from the pool it circulates through the canisters, dissolving the trichloro, thereby chlorinating the water before it was returned to the pool.

Threatt testified that he observed chlorine gas coming from one of the canisters in the chlorinators. As the emissions increased, Threatt called the Green Township Fire Department. Chief Calderone of the fire department responded to the call. Upon his arrival at the hotel, chlorine fumes had spread over a wide area, including the inside of the hotel. Calderone called the Summit County Hazardous Material Response Team ("SCHMRT") for assistance. SCHMRT, composed of volunteers from fire departments throughout Summit County, was created to provide a unified response to accidents involving hazardous materials.

As these events were unfolding, Whiston, employed as a part-time medical technician with the Green Township Fire Department, was called into work. When he arrived at the scene, he was directed by Chief Calderone to assist in the evacuation of the hotel. When the evacuation was complete, members of SCHMRT, wearing protective clothing and using self-contained breathing apparatus ("SCBA"), approached the pump house. They removed the canisters of trichloro and deposited them into barrels of water to dilute the compound.

As the cleanup was nearing completion, Chief Calderone instructed Whiston to assist a SCHMRT member, later identified as Donald Zito of the Richfield Fire Department. Inadvertently, a canister of trichloro had been left lying on the ground. Zito directed Whiston to pick up the canister and dump the contents into a water barrel. At the time neither Whiston nor Zito was using his SCBA. While leaning over the barrel, Whiston inhaled chlorine fumes and was overcome. He was later transported to the hospital for emergency treatment and released. As a result of the inhalation of these fumes, Whiston alleges, that he suffers from asthma and chronic, hyper-reactive airway disorder.

Seven defendants were voluntarily dismissed prior to trial. On March 4, 1991, the court granted summary judgment in favor of defendants Donald Zito, village

of Richfield Fire Department, SCHMRT and Summit County (hereinafter referred to collectively as the "Public Defendants"). On March 6, 1991, the court granted summary judgment in favor of Holiday Inns, Inc., the franchisor of the hotel and Akron South Hotel Partners, Akron South Hotel Corporation, HPA Partners and HPA, Inc., the owners and franchisees of the hotel (hereinafter referred to collectively as the "Holiday Inn Defendants").

The case proceeded to trial against the sole remaining defendant, Bio–Lab, Inc., the manufacturer of the canisters of trichloro, marketed under the name "Bio–Guard Thrif Tab." The Whistons claimed that Bio–Lab was negligent and strictly liable in failing to provide an adequate warning of the risks associated with its product. At the close of all the evidence, the Whistons dismissed their negligence claim, proceeding only on the issue of Bio–Lab's strict liability. The jury returned a verdict in favor of Bio–Lab. The Whistons appeal, raising seven assignments of error relating to trial procedures and the grants of summary judgment.

## Assignment of Error I

"The court erred in failing to direct a verdict against defendant Bio–Lab on the issue of liability for failure to warn."

At trial, it was established that the only warning provided by Bio–Lab concerning the hazards of its product was printed on a plastic sleeve wrapped around the canisters. In order to puncture the canisters before insertion into the automatic chlorinator, this label must be removed. Indeed, the warning label had been removed from the canister handled by Whiston.

The Whistons first point out that trichloro-s-triazinetrione is listed as a hazardous chemical in the federal Department of Transportation's Table of Hazardous Materials. Section 172.101, Title 49, C.F.R. Additionally, by Bio–Lab's own admission, its product is regulated under the federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"). Section 136 *et seq.*, Title 7, U.S.Code. Under Section 136w(c)(3), Title 7, U.S.Code, the Administrator of the Environmental Protection Agency is required to establish standards for the packaging of regulated pesticides. In compliance with this duty, the administrator had adopted the following regulation:

"Placement of Label—(i) General. The label shall appear on or be securely attached to the immediate container of the pesticide product. For purposes of this Section, and the misbranding provisions of the Act [Section 136q, Title 7, U.S.Code], *'securely attached' shall mean that a label can reasonably be expected to remain affixed during the foreseeable conditions and period of use.* * * * " (Emphasis added.) Section 156.10(a)(4), Title 40, C.F.R.

The Whistons assert that because its label was designed to be removed during the "foreseeable conditions and period of use" of the product, Bio–Lab was in violation of federal law. As one purpose of FIFRA is to protect human life from the inadvertent exposure to dangerous pesticides, appellants contend, this violation gave rise to a *per se* liability on the part of Bio–Lab. Additionally, the Whistons claim that Bio–Lab's inadequate warning rendered its product defective pursuant to R.C. 2307.76. Accordingly, they contend the court erred in denying their motion for directed verdict as to Bio–Lab's liability. We disagree.

Under Civ.R. 50(A)(4), a motion for directed verdict may be properly granted only when, after construing the evidence most strongly in favor of the nonmoving party, the court finds that, based upon the evidence submitted, reasonable minds could come to but one conclusion which is adverse to the nonmoving party. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178, 423 N.E.2d 467, 469.

■ Assuming *arguendo* that Bio–Lab's product was in violation of FIFRA and/or R.C. 2307.76, the Whistons were still not entitled to the directed verdict they sought. There remained the factual issue of whether any failure of Bio–Lab to provide an adequate warning was the proximate cause of Robert's injury:

"One of the hurdles, which is present in all products liability litigation, standing between proof of a negligent failure to warn and ultimate recovery[,] is the necessity of proof of a proximately causal relationship between the negligence and the injury." *Hargis v. Doe* (1981), 3 Ohio App.3d 36, 37, 3 OBR 38, 39, 443 N.E.2d 1008, 1010.

Even if it be proved that a manufacturer failed to warn of a product-related danger, "it is relevant to show whether the user of the product would have acted in the same manner had a proper warning been given." 63 American Jurisprudence 2d (1984) 455, Product Liability, Section 356. See, also, 70 Ohio Jurisprudence 3d (1986) 137, Negligence, Section 62; Annotation (1961), 76 A.L.R.2d 9, 66, Section 17.

Accordingly, because the Whistons' motion for directed verdict requested generally a finding of liability on the part of Bio–Lab, the court was correct in denying the motion. Appellants' first assignment of error is overruled.

### Assignment of Error II

"The court erred in admitting the videotape experiment by defendant Bio–Lab for purposes of demonstrating contamination because it was without foundation, did not properly simulate conditions, and prejudiced the jury."

■ One of Bio–Lab's defenses was that its product, after leaving its control, was contaminated and/or misused. In furtherance of this defense, Bio–Lab called

as an expert witness Dr. Kent Knaebel, professor of chemical engineering at Ohio State University. Dr. Knaebel testified, based upon his experiments, that there is little or no reaction when trichloro is combined with water. In contrast, his experiments demonstrated the violent chemical reaction which may occur when water is mixed with a combination of trichloro and calcium hypochlorite, another chlorine compound. Toward the end of his direct examination, the court permitted Bio–Lab, over the Whistons' objection, to play a videotaped recording of Dr. Knaebel's experiments. The Whistons contend there was no proper foundation that Dr. Knaebel's experiments bore any similarity to the conditions existing at the time of the accident.

In prior testimony, Willie Threatt stated that granular calcium hypochlorite was used at the hotel. When the condition of the water required a quick infusion of chlorine, calcium hypochlorite was poured directly into the pool. The hotel purchased calcium hypochlorite in twenty-five-pound buckets, which were stored in the pump house.

The use of calcium hypochlorite at the hotel and its storage in the pump house, where the canisters of trichloro were located, form the basis of Bio–Lab's theory as to the cause of the chlorine gas emissions. Any dissimilarities between Dr. Knaebel's tests and the actual conditions at the time of the accident went to the weight of the evidence, not its admissibility. *St. Paul Fire & Marine Ins. Co. v. B. & O.R.R. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, paragraph one of the syllabus. Given the trial court's broad discretion in deciding whether evidence is sufficiently probative to warrant admission, we find no error. See *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281; *Humphrey v. State* (1984), 14 Ohio App.3d 15, 18, 14 OBR 18, 21, 469 N.E.2d 981, 985.

Appellants' second assignment of error is without merit.

### Assignment of Error III

"The court erred because the jury instruction on contamination/misuse of the Bioguard [*sic*] container omitted reference to the requirement that defendant Bio–Lab prove contamination/misuse could not reasonably have been foreseen, and failed to explain adequately what foreseeability meant as to misuse and how to judge this standard."

■ While the jury was instructed generally as to causation and foreseeability, the Whistons contend the court erred in failing to specifically instruct as to a manufacturer's liability for injuries resulting from the foreseeable misuse of its product.

It is fundamental that a party must object to the giving of, or failure to give, a jury instruction before the jury begins deliberations. Unless such an objection is timely made, a party may not assert error based upon the instructions of the court. Civ.R. 51(A); *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus.

In examining the record, we find no objection by the Whistons related to the court's failure to instruct the jury on foreseeable misuse. Therefore, this assignment of error is overruled.

## Assignment of Error V

"The court erred in instructing the jury on assumption of risk because as a matter of law the defense of assumption of risk was not available."

■ Under this assignment of error, the Whistons rely upon the holding in *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, syllabus, wherein the court stated:

"An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities."

In *Cremeans*, the plaintiff brought a products liability action against the manufacturer of a loader which plaintiff regularly used during the course of his employment. A plurality of the court held that the manufacturer could not assert an assumption-of-the-risk defense because the plaintiff encountered the risk not voluntarily, but out of "economic necessity." *Id.* at 148–150, 566 N.E.2d at 1206–1208. The necessity arises from the employee's compulsion to either accept certain employment conditions or risk termination. *Id.*

In *Cremeans*, the plaintiff was injured on November 30, 1983, prior to the adoption of R.C. 2315.20, Am.H.B. No. 1, passed September 30, 1987, effective January 5, 1988. Under R.C. 2315.20(B)(1), the General Assembly has provided that:

"Express or implied assumption of the risk may be asserted as an affirmative defense to a product liability claim under sections 2307.71 to 2307.80 of the Revised Code."

As this includes R.C. 2307.76, claims of defective products due to inadequate warning or instruction, this assignment of error is overruled.

### Assignment of Error VI

"The court erred in denying plaintiff's motion for a new trial because the jury considered prejudicial and erroneous third-party statements concerning an alleged prior trial."

Following the verdict, the Whistons, alleging jury misconduct, moved for a new trial pursuant to Civ.R. 59(A)(2). In support of their motion, they presented the sworn statement of one juror. This juror related a conversation she had had with an unidentified third person, wherein she was led to believe that the case had been previously tried. The juror further stated:

"So then the next day walking in from the parking lot, one of the jurors * * * you know, what they [the jurors] were saying was that they were wondering about some of the evidence or some of the things that were presented had to be retagged and I said—made the statement that I understood this had been in court before and that's all that was said."

At trial, the Whistons used exhibits which had been previously marked for purposes of taking depositions. As these exhibits were introduced at trial, they were remarked. At no time did the Whistons offer any explanation or request the court to explain to the jury why the exhibits had been previously marked, but left the matter to the speculation of the jury. Now they ask us to find error based upon the possible misconstruction of events by the jurors. This we refuse to do.

Following a verdict, claims of jury misconduct may not be raised solely upon the statements of the jurors, but must point to some competent credible evidence *aliunde,* that is, evidence from some other source. *Nickel v. Gonzalez* (1986), 34 Ohio App.3d 364, 519 N.E.2d 414; *Lund v. Kline* (1938), 133 Ohio St. 317, 10 O.O. 411, 13 N.E.2d 575. To hold otherwise would subject jury verdicts to collateral attack and undermine their finality. Having failed to so support their claim of jury misconduct, the Whistons' motion for a new trial was properly denied by the trial court.

Appellants' sixth assignment of error is overruled.

### Assignments of Error IV and VII

"IV. The court erred in granting summary judgment to defendant Akron South Hotel Partners (Holiday Inn) upon the basis of the fireman's rule."

"VII. The court erred in granting summary judgment to Holiday Inns, Inc., Akron South Hotel Partners, Akron South Hotel Corporation, HPA Partners, and HPA, Inc., hereinafter collectively 'Holiday Inn Defendants' and the Summit County HAZ–MAT Team, Summit County Government, Village of Richfield, Richfield Fire Department, and Donald Zito, hereinafter collectively 'Public

Defendants,' for the reason that the court determined issues of fact turning on the credibility of witnesses, which fact issues should have been submitted to the jury on proper instructions."

Under these two assignments of error the Whistons challenge the court's grant of summary judgment to the Holiday Inn Defendants and the Public Defendants.

The court may properly grant summary judgment only when there is no dispute as to any material fact and viewing the facts most favorably for the nonmoving party, that party cannot prevail as a matter of law. *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 88, 585 N.E.2d 384, 389; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273; Civ.R. 56(C). With this standard in mind we shall examine separately the propriety of the court's ruling as to each of these groups of defendants.

### *Public Defendants*

The Whistons contend the court erred in finding these defendants immune from civil liability pursuant to R.C. 2744.02 and 2744.03, which set forth governmental immunities generally. They argue that, under the circumstances of this case, these statutes are rendered inapplicable by the more specific R.C. 2305.232 (Sub.H.B. No. 712), entitled "[c]ivil immunity for persons assisting in [the] cleanup of hazardous materials." The Whistons would have this court rule that, in the cleanup of hazardous materials, the more specific statute has abrogated the general governmental immunities provided by R.C. 2744.02 and 2744.03. For the following reason, we decline to do so.

In the construction of a statute it is a primary rule that "courts should not construe one statute in a way that would abrogate, defeat, or nullify another statute, where a reasonable construction of both is possible." *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 86, 12 O.O.3d 88, 91, 388 N.E.2d 1229, 1232. See, also, R.C. 1.51. When resolving any uncertainties in a statute, courts are obliged to discern the intentions of the General Assembly by examining "the language employed and the purpose to be accomplished." *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 28 O.O. 53, 55, 53 N.E.2d 1021, 1023. There exists a strong presumption against any construction which would produce unreasonable or absurd results. R.C. 1.47(C); see *State ex rel. Belknap v. Lavelle* (1985), 18 Ohio St.3d 180, 181–182, 18 OBR 248–250, 480 N.E.2d 758, 759–760.

Application of R.C. 2305.232 to the services of firemen in the cleanup of hazardous materials would render null any governmental immunity under R.C. 2744.02 and 2744.03. We do not believe the General Assembly intended such a result.

The purpose in enacting R.C. 2305.232 was to encourage private citizens to voluntarily provide their expertise in the containment of emergencies involving hazardous materials. See Sub.H.B. No. 712, preamble and Section 2. To achieve this goal, the statute provides civil immunity, under certain enumerated conditions, to those persons volunteering their services. We find no intent by the General Assembly to limit the comprehensive governmental immunities provided by R.C. 2744.02 and 2744.03. Accordingly, the issue is whether the court properly applied these statutes in granting summary judgment to the Public Defendants. We find that it did.

R.C. 2744.02(A)(1) begins with the general proposition that political subdivisions are "not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or propriety function." Exceptions to this general immunity are carved out under R.C. 2744.02(B) when the political subdivision or its employee causes injury arising out of (1) operation of a motor vehicle, other than a police, fire or emergency vehicle responding to an emergency; (2) proprietary functions; (3) failure to safely maintain public thoroughfares; (4) failure to safely maintain public buildings; and (5) express provisions by another section of the Revised Code.

In the present case, there can be no question that the Public Defendants were responding to an emergency situation. Accordingly, as to each governmental entity the immunity provided under R.C. 2744.02 applied and the court correctly granted summary judgment in their favor.

■ As to Donald Zito's personal liability, generally the immunity provided under R.C. 2744.02 applies. However, pursuant to R.C. 2744.03(A)(6)(b), an employee is not immune from civil liability, even when acting within the scope of his official duties, when "[h]is acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." The Whistons argue that summary judgment was inappropriate as to defendant Zito because the nature of his conduct was a material factual issue for trial.

SCHMRT is a joint venture of the Summit County Fire Chiefs Association created to provide a unified response to emergencies involving hazardous materials. By its organizational rules SCHMRT members must be employees of a fire department located within Summit County and volunteer to be part of SCHMRT. The county is divided into five zones. As an emergency occurs, the local fire department initially attempts to contain the problem. Thereafter the local fire department calls for assistance from members located within its zone, and then a countywide response if necessary. The organizational rules further provide:

"Chain of Command: The Fire Chief of the local community does not relinquish any of his authority or responsibility. He is still in charge of the scene. The team provides him with additional equipment, manpower, and resources. The senior team member at the incident will be the liaison with the local Incident Commander (Fire Chief)."

Under the organizational rules of SCHMRT, the local fire chief, in this case Chief Calderone, had complete control over the emergency and direction of the team members, including Donald Zito.

" '[A]s a general proposition, if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he has been lent * * *.' Furthermore, it is of no legal import that the party who lent the servant continues to pay him as long as the 'borrowing' party controls the servant as to the work to be performed." *Baird v. Sickler* (1982), 69 Ohio St.2d 652, 655, 23 O.O.3d 532, 534, 433 N.E.2d 593, 595, citing *Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 153, 25 O.O. 257, 263, 47 N.E.2d 199, 206. See, also, *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 54, 15 OBR 145, 150, 472 N.E.2d 335, 341 (Holmes, J., concurring in part, dissenting in part).

In this case Zito, while employed by the Richfield Fire Department, was lent to the Green Township Fire Department and was under the control of Chief Calderone. As Whiston was acting within the scope of his employment with the Green Township Fire Department, he and Zito were acting as fellow employees. Accordingly, immunity from suit attached to the acts of Zito as a fellow employee pursuant to R.C. 4123.741 of the Workers' Compensation Act. While such immunity does not apply to the intentional torts of fellow employees, *Nayman v. Kilbane* (1982), 1 Ohio St.3d 269, 1 OBR 379, 439 N.E.2d 888, the facts of this case do not support a finding that Zito intentionally injured Whiston.

From the foregoing, we find no error in the trial court's grant of summary judgment in favor of the Public Defendants.

*Holiday Inn Defendants*

In *Held v. Rocky River* (1986), 34 Ohio App.3d 35, 36, 516 N.E.2d 1272, 1274, the court held that "an injured fireman may not recover from one whose only connection to the injury is that his negligence caused the fire." In summarizing what is known as the "fireman's rule," the court stated:

"One who goes to assist in putting out a fire and is injured cannot establish liability on the part of the property owner for such injury by showing negligence in starting the fire, but only by showing some negligent act or omission after he

went to the fire." (Emphasis omitted.) *Id.* at 36–37, 516 N.E.2d at 1274, citing *City Serv. Oil Co. v. Dixon* (1932), 14 Ohio Law Abs. 203.

The basis of this rule is that firemen, in the normal course of their employment, assume certain risks inherent to their job. The Whistons point out, and we agree, that this does not mean that firemen accept all risks, including those not reasonably anticipated in the course of a fire. See, generally, *Ruhl v. Philadelphia* (1943), 346 Pa. 214, 220, 29 A.2d 784, 787.

The Ohio Supreme Court has held that a policeman who enters the premises in the performance of his official duties, without express or implied invitation, is a licensee. *Scheurer v. Open Bible Church* (1963), 175 Ohio St. 163, 23 O.O.2d 453, 192 N.E.2d 38, paragraph one of the syllabus. Accordingly, the owner is not liable for ordinary negligence, owing the licensee no duty except to refrain from willfully or wantonly causing injury. *Id.* at paragraph two of the syllabus. See, also, *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 167, 502 N.E.2d 611, 613. However, the court in *Brady v. Consol. Rail Corp.* (1988), 35 Ohio St.3d 161, 519 N.E.2d 387, acknowledged an exception to the fireman's rule. When a public officer enters into an area of the property held open to the general public, where the owner should reasonably expect his presence, then the officer becomes an invitee. *Id.* at 163, 519 N.E.2d at 388.

The Whistons first assert that Robert did not assume the risk of inhalation of chlorine fumes, this being unanticipated. Alternatively, they argue that there exists a factual issue as to whether that canister was placed by the Holiday Inn Defendants in an area open to the public.

As to the first of these arguments, the risk of exposure to chlorine gas was the reason emergency personnel were called to the hotel. Based upon Holiday Inn's motion for summary judgment and the Whistons' response, the facts were uncontroverted that Robert approached the emergency wearing protective clothing and using a SCBA. Construing these facts most favorably for the Whistons, as required in reviewing a motion for summary judgment, we find that as a matter of law, the injury Robert sustained was exactly the type associated with the reasons emergency personnel were called to the hotel. Additionally, we find no factual support that the Holiday Inn Defendants wantonly or willfully caused the injury.

As to the Whistons' second argument, the Holiday Inn Defendants supported their motion for summary judgment with an affidavit of Mark Casalinova, a SCHMRT member. Casalinova stated that he removed from the pump house the canister of trichloro later handled by Robert. He further stated that the canister was at all times located within the area cordoned off by the emergency personnel, and not accessible to the general public.

When a party moves for summary judgment, the responding party must set forth "specific facts showing that there is a genuine issue for trial." Mere reliance on the pleadings is not sufficient when the motion presents facts negating an essential element for which the respondent carries the burden of proof. Civ.R. 56(E); see *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 274.

The Whistons presented no factual basis for their claim that the canister of trichloro was located in a public area and placed there by the Holiday Inn Defendants or their employees. Accordingly, their attempt to raise an exception to the fireman's rule must fail.

Appellants' fourth and seventh assignments of error are overruled.

Having overruled each of the Whistons' assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

BAIRD, P.J., and COOK, J., concur.