CARNES ET AL.; SCHAEFER ET AL., APPELLANTS, *v.* KEMP, APPELLEE.

[Cite as *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio 7107.]

*Domestic relations – Parentage actions – Child support — R.C. 3111.05 and 3111.13 – Juvenile court has jurisdiction to award child support payments to an adult emancipated child if a parentage action is filed before the child's 23d birthday.*

(Nos. 2003-2116 and 2003-2183 — Submitted

October 12, 2004 — Decided December 30, 2004.)

APPEAL from and CERTIFIED by the Court of Appeals for

Auglaize County, No. 2-03-10, 2003-Ohio-5884.

_____

**SYLLABUS OF THE COURT**

A juvenile court has jurisdiction to award retroactive child support payments to an adult emancipated child if a parentage action is filed prior to the child's 23d birthday.  [R.C. 3111.05 and 3111.13(C), construed.]

_____

**FRANCIS E. SWEENEY, SR., J**.

{¶ 1}  Deborah Carnes gave birth to Jessica Schaefer, plaintiff-appellant, on June 12, 1982.  During her pregnancy, Carnes told defendant-appellee, Barrett Kemp II, that she believed he was the father.  Kemp saw Jessica once, when she was two weeks old, but then moved to Texas.  Carnes contacted Kemp in Texas shortly after the move.  In 1984, he offered to fly her and Jessica to Texas, but this never occurred.  Carnes lost touch with Kemp and, through an attorney, tried to find him when Jessica was around eight or nine years old, but was unsuccessful.  Carnes went on public assistance and never received any monetary support from Kemp.

**{¶ 2}** In January 2001, when Jessica was 18 years old, she located Kemp via an Internet search. On January 27, 2001, Jessica filed an application with appellant, the Auglaize County Child Support Enforcement Agency ("ACCSEA"). On September 10, 2001, Jessica, her mother, and ACCSEA filed a paternity action to establish the father-child relationship between Jessica and Kemp. A hearing was held and testimony was taken on February 5, 2003. Kemp was not present but was represented by counsel. The parties stipulated that Kemp was the natural and biological father of Jessica. The parties further stipulated that according to the Ohio Child Support Guidelines, if the court ordered him to pay support retroactive to Jessica's date of birth up to emancipation, Kemp's total child support obligation would be $52,514.06.

**{¶ 3}** Kemp's attorney moved to dismiss Schaefer's request for child support, arguing that the court was without jurisdiction to order support, since Jessica was over 18 years old when the complaint was filed. The trial court held that it did not have jurisdiction to enter an order of support to Deborah Carnes. However, based upon its interpretation of R.C. 3111.05 and 3111.13(C), the court concluded that it did have jurisdiction to award retroactive child support to Jessica, calculated from the date of birth to the age of 18.

**{¶ 4}** The court of appeals reversed and remanded, finding that the juvenile court is without authority to award retroactive child support to an adult child who seeks support after she reaches the age of majority. The court of appeals certified its judgment as in conflict with that of the Second Appellate District in *In re Buechter*, Miami App. No. 2002-CA-22, 2002-Ohio-5598, 2002 WL 31341567, and the Fourth Appellate District in *Sexton v. Conley,* Scioto App. No. 01CA2823, 2002-Ohio-6346, 2002 WL 31630766. This cause is now before this court upon our determination that a conflict exists and pursuant to the allowance of a discretionary appeal.

2

**{¶ 5}** The certified issue before this court is: "Does a court have subject-matter jurisdiction to award retroactive child support payments in a paternity action initiated after the child has reached the age of majority?" For the following reasons, we answer this question in the affirmative and reverse the judgment of the court of appeals.

**{¶ 6}** R.C. 3111.06 provides a juvenile court with jurisdiction to hear parentage actions. The pertinent statute of limitations for parentage actions is set forth in R.C. 3111.05 and provides: "An action to determine the existence or nonexistence of the father and child relationship may not be brought later than five years after the child reaches the age of eighteen." Thus, a child has up until the age of 23 to file a parentage action.

**{¶ 7}** Once a father-child relationship is established, a trial court has the authority to order support. R.C. 3111.13(C) expressly states that "the judgment or order may contain * * * *any other provision directed against the appropriate party to the proceeding, concerning the duty of support* * * *." (Emphasis added.) It is undisputed that under this statute, a court may order back support to a minor child. However, the question we must answer in this appeal is whether an adult child is entitled to back child support if she files a paternity action before her 23d birthday.

**{¶ 8}** Appellants argue that when R.C. 3111.05 is read in conjunction with R.C. 3111.13, it becomes clear that the juvenile court retains jurisdiction to award retroactive support in a paternity action brought after the emancipation of the child but prior to the child's 23d birthday. Appellee, however, maintains that once a child reaches the age of 18, she is no longer a child and the juvenile court has no jurisdiction to order a parent to pay prior support obligations.

**{¶ 9}** The courts of appeal have taken divergent positions on this issue. One line of cases holds that a trial court lacks jurisdiction to order a parent to pay back child support to an adult child who files a parentage action against him or

her. The leading case supporting this view is the First District Court of Appeals' opinion in *Snider v. Lillie* (1997), 131 Ohio App.3d 444, 722 N.E.2d 1036, a decision the court of appeals relied on. In reaching this conclusion, the *Snider* court stated that there is no provision in R.C. Chapter 3111 that provides for retroactive child support to an adult child. The court further reasoned that since the legal duty to support exists only during the child's minority, the support action must be commenced before the child turns 18. The court stated:

{¶ 10} "The purpose of child support is to meet the current needs of a minor child. *Park v. Ambrose* [1993]*,* 85 Ohio App.3d [179] at 183, 619 N.E.2d [469] at 472, fn. 1. * * * [T]he duty of support exists only during a child's minority. Neither the mother of a child nor an emancipated eighteen-year-old can attempt to establish support in the first instance in a post-majority filing."

{¶ 11} The court of appeals' majority opinion relied heavily on this public-policy argument in holding that the juvenile court lacked jurisdiction to award back child support to Jessica. The court reasoned that when a child reaches the age of majority the parents no longer have a duty to support the child.

{¶ 12} Other courts of appeals, however, specifically reject the rationale employed by the *Snider* court. While these courts acknowledge that a parent's duty to support a child generally ends when the child reaches the age of majority, they believe that the interplay between R.C. 3111.05 and 3111.13 dictates the opposite result. See *In re Buechter*, Miami App. No. 2002-CA-22, 2002-Ohio-5598, 2002 WL 31341567; *Sexton v. Conley,* Scioto App. No. 01CA2823, 2002-Ohio-6346, 2002 WL 31630766; *Elzey v. Springer*, Fayette App. No. CA2003-04-005, 2004-Ohio-1373, 2004 WL 549805; *Hudgins v. Mitchell* (1998), 128 Ohio App.3d 403, 715 N.E.2d 213; *Spires v. Moore* (Nov. 24, 1999), Muskingum App. No. CT98-0040, 2000 WL 1545. In their view, the fact that R.C. 3111.05 extends the time in which to bring a parentage action to age 23 is of particular significance. As the *Sexton* court noted:

**{¶ 13}** "We acknowledge that, generally, a parent's duty to support their children terminates on the child's eighteenth birthday. * * * Moreover, the language utilized by the legislature implies that the court will make the support order for the *current* needs of the minor child. R.C. 3111.13(E) and (F); *Park [v. Ambrose]*, 85 Ohio App.3d at 183, 619 N.E.2d 469, n. 4. Therefore, without considering R.C. 3111.05, one could argue that courts have no authority to award an adult emancipated child support when no court made a child support order during the child's minority. However, since the legislature extended the time to file a paternity action beyond the child's eighteenth birthday and permitted a child support order as a remedy once a court established paternity, it appears that the legislature envisioned an award of retroactive child support to an adult emancipated child under R.C. Chapter 3111." (Emphasis sic.)

**{¶ 14}** The Eighth District Court of Appeals opinion of *Seegert v. Zietlow* (1994), 95 Ohio App.3d 451, 460, 642 N.E.2d 697, also noted, in dicta, the significance of the legislature's extending the statute of limitations for a parentage action beyond 18, to age 23. The *Seegert* court explained:

**{¶ 15}** "We also believe it is worth noting that a parentage action may be brought up to five years after a child reaches the age of majority. R.C. 3111.05. Because the parents' duty to support their children generally extends to the child's eighteenth birthday, see R.C. 3103.03, it would be illogical to extend the statute of limitations beyond the child's majority if the legislature contemplated that only current support be awarded in a paternity action. After a child has reached the age of majority, the putative parent would generally no longer have any duty to support that child. Thus, by extending the statute of limitations beyond the age of majority, when the parent no longer has any duty of support, it appears the legislature envisioned that back child support would be awarded in a parentage action."

**{¶ 16}** In deciding which line of cases is the more sound, we are guided by well-settled rules of statutory construction. In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute. *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 28 O.O. 53, 53 N.E.2d 1021. In order to determine that intent, a court must first look at the words of the statute itself. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. We are also mindful that " 'all statutes which relate to the same general subject matter must be read *in pari materia.' "* *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, quoting *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567 N.E.2d 1018. In construing such statutes together, full application must be given to both statutes unless they are irreconcilable. *Cater*, id.

**{¶ 17}** We first look to the plain language of the pertinent statutes. R.C. 3111.05 expressly provides that a paternity action may be commenced up to age 23, five years after the child has reached age 18. R.C. 3111.13(C) provides that a juvenile court has the authority to make a support order once a parentage determination is made. Thus, R.C. 3111.05 extends the length of time in which to bring a parentage action, while R.C. 3111.13(C) is couched in broad language and does not limit a juvenile court's jurisdiction in a parentage action to award retroactive support to minor children only.

**{¶ 18}** Consequently, we reject the rationale employed by the *Snider* court and instead are persuaded by those decisions, including the certified conflict cases, that hold that an adult child may seek retroactive child support up until age 23. Not only does the statutory language dictate this result, but we also believe that since the law specifically allows a child age 18 to 23 to file a paternity action, noncustodial parents should be accountable to their children up until the child's 23d birthday and should not be able to shirk their responsibility as parents simply because the child may not have contacted or found the parent during the child's

younger years. Consequently, we hold that a juvenile court has jurisdiction to award retroactive child support payments to an adult emancipated child if a parentage action is filed prior to the child's 23d birthday.

{¶ 19} Accordingly, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

Judgment reversed
and cause remanded.

MOYER, C.J., RESNICK, PFEIFER and O'CONNOR, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 20} I respectfully dissent because I believe that a juvenile court lacks authority to award retroactive child support to a child who files after reaching the age of majority. There may be a strong emotional appeal to allowing the result fashioned by the majority today. However, these arguments are better directed to the General Assembly.

{¶ 21} R.C. 3111.05 provides only a statute of limitations for a parentage action. It states:

{¶ 22} "An action to determine the existence or nonexistence of the father and child relationship may not be brought later than five years after the child reaches the age of eighteen. Neither section 3111.04 of the Revised Code nor this section extends the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by Chapter 2105., 2107., 2113., 2117., or 2123. of the Revised Code."

{¶ 23} An adult child may have various reasons to file a paternity action: to establish inheritance rights, to qualify for governmental benefits from the putative parent, to explore medical history, etc. However, none of these reasons are related to the collection of child support.

{¶ 24} Had the General Assembly intended for an adult child to be able to file a parentage action for retroactive child support payments, it could clearly have done so. Rather, today this court does so by judicial decree, by applying the "in pari materia" doctrine. Yet that doctrine is clearly inapplicable here because the statutes the majority attempts to reconcile are actually in conflict.

{¶ 25} Juvenile courts are courts of limited jurisdiction, and their powers are created by statute. R.C. 2151.23 defines that jurisdiction but refers only to a support order for a "child," which is defined as "a person who is under eighteen years of age," R.C. 2151.011(B)(5), while an adult is defined as "an individual who is eighteen years of age or older." R.C. 2151.011(B)(2). R.C. 2151.23(B)(2) specifically authorizes the juvenile court to determine the paternity of a "child." R.C. 3111.05 extends the statute of limitations to allow juvenile courts to determine paternity for persons beyond age 18 and up to age 23. However, R.C. 3111.05 does not mention extending the right to collect retroactive child support. The legislature clearly knew how to create child support extensions in certain situations, such as where a child, although 18, is still attending an accredited high school (R.C. 3103.03) or the child has been found to be an unruly child (R.C. 2151.011(B)(5)). However, neither R.C. 3111.13(C), 3111.13(F), nor any other division of that statute authorizes the juvenile court to order retroactive child support payments for a child who has reached the age of majority. The implicit reason for the lack of such a provision is that parents no longer have any duty to support a child once the child has reached the age of majority.

{¶ 26} The majority creates a category of an "adult emancipated child" to find jurisdiction. Precedent dictates the opposite conclusion. In *Miller v. Miller* (1951), 154 Ohio St. 530, 43 O.O. 496, 97 N.E.2d 213, we held that "[i]n a divorce action, where a child of the parties attains his majority, authority of the court over such child comes to an end, and the court is without power to provide for the support of or aid to such child or to continue a provision for his support.

*Thiessen v. Moore* [1922], 105 Ohio St. 401, 137 N.E. 906, approved and followed." *Miller* at paragraph two of the syllabus.

{¶ 27} But an adult emancipated child is one freed from parental control. *Price v. Price* (1983), 12 Ohio App.3d 42, 12 OBR 129, 465 N.E.2d 922, at paragraph one of the syllabus. "A definition of emancipation would necessarily include marriage, self-support and/or residence beyond the care and control of parents." *Hall v. Hall* (Mar. 15, 2001), 8th Dist. No. 77804, 2001 WL 259210, citing *Price.* In this case, we are dealing with an adult. The juvenile court lacks jurisdiction over an adult.

{¶ 28} In fact, R.C. 2105.26 clearly evidences an intent to *prohibit* the collection of child support if paternity is determined after the person reaches adulthood. The statute, which establishes paternity on behalf of a father's application through the probate court, states in Division (C):

{¶ 29} "After issuance of an order under this section, the adult child shall be considered the child of the man declared to be the father as if born to him in lawful wedlock, except that *the adult child and the adult child's mother shall not be awarded child support from the man from the time the adult child was a mino*r." (Emphasis added.)

{¶ 30} The majority fails to address this statute or its effect on R.C. 3111.05. One does not need to guess its intent – it is a clear *prohibition*. An adult cannot go back and collect child support not awarded while he or she was still a minor. It is illogical for the legislature to flatly prohibit any collection of back child support in R.C. 2105.26 yet allow it in R.C. 3111.05 if the adult is not yet 23. These sections can be reconciled only by acknowledging that R.C. 3111.05 is only a statute of limitations, not a collection statute for any child no longer a minor.

{¶ 31} The practical application of today's ruling is problematic. If a court orders retroactive child support, which party is entitled to payment? Is it the

child or the person who cared for the child during minority? Is the government agency who provided public assistance during the child's minority entitled to payment or subrogation rights? May an adult child seek back child support where the mother knew the identity of the father but did not initiate a paternity action? If so, do the mother's actions violate the emancipated child's rights? Today's ruling may potentially obligate a parent to pay 18 years of child support when that parent never knew of the child's existence and never had an opportunity to establish a parental relationship. These issues should be subjected to public debate as part of our legislative process. It is not a right to be judicially created.

{¶ 32} The opinions of the appellate courts in *Snider v. Lillie* (1997), 131 Ohio App.3d 444, 722 N.E.2d 1036; *In re Livingston* (1996), 115 Ohio App.3d 613, 685 N.E.2d 1285, and in this case are the better reasoned opinions, as they rely on the clear wording of R.C. 3111.05. The legislature has clearly stated in R.C. 2105.26(C) that such support cannot be collected. R.C. 3111.05 provides only a statute of limitations for establishing paternity. R.C. 3111.13 deals only with support orders for a "child." There is nothing to interpret.

{¶ 33} For these reasons, I respectfully dissent and would affirm the judgment of the court of appeals and answer the certified question by holding that a court does not have subject-matter jurisdiction to award retroactive child support payments in a paternity action initiated after the child has reached the age of majority. Therefore, I respectfully dissent.

O'DONNELL, J., concurs in the foregoing dissenting opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 34} I am unable to join today's majority. In my view, a juvenile court lacks statutory authority to award retroactive child support to an adult child when the initial claim for support is made after the child reaches the age of majority.

**{¶ 35}** The analysis presented by the majority is not persuasive. And reading R.C. 3111.05 in pari materia with R.C. 3111.13(C) creates only an inference of legislative intent allowing a juvenile court to make such an award. But common sense and express statutory language dictate otherwise. As pointed out by the appellate court below, generally no duty exists for parents to provide support to adult children. See R.C. 3103.031.[1] It is apparent to me that reasonable jurists can justify different outcomes by interpreting these sections of the Revised Code, and different appellate districts have reached opposite conclusions on these issues.[2]

**{¶ 36}** The different views expressed among appellate districts recognize the difficulty of determining legislative intent and suggest to me that this is a matter of state policy better left to the legislative branch of government for resolution. As Justice Stratton has articulated in her dissenting opinion, I also foresee a myriad of problems generated by authorizing adult children to sue their parents for retroactive child support. Not only is such a result counterproductive to engendering a strong family atmosphere, but it also pits family members against each other in a fight over cash, which also may include governmental agencies in certain instances pursuant to R.C. 3111.07. As highlighted by the appellate court in this case, the purpose of child support is to ensure that the child's basic necessities are provided for during the years of the child's upbringing. As stated by the able author of the well-reasoned and practical appellate court opinion, once a child reaches the age of majority, it is presumed that the child had received adequate support during minority; any action filed

---

1. Effective March 22, 2001, R.C. 3103.031 provides: "[A] man determined to be the natural father of a child under sections 3111.01 to 3111.18 * * * of the Revised Code * * * assumes the parental duty of support for that child. Notwithstanding section 3109.01 of the Revised Code * * *, the parental duty of support to the child shall continue beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school."

2. See *Carnes v. Kemp*, Auglaize App. No. 2-03-10, 2003-Ohio-5884; *Sexton v. Conley*, Scioto App. No. 01CA2823, 2002-Ohio-6346; *In re Buechter*, Miami App. No. 2002-CA-22, 2002-Ohio-5598; *Snider v. Lillie* (1997), 131 Ohio App.3d 444, 722 N.E.2d 1036.

once the child reaches the age of 18 is essentially seeking cash from a parent because the law presumes that the necessities have been provided during minority.

{¶ 37} This decision, while offering an interpretation of the statutes in question, treads well into the field of establishing state policy contrary to that expressed by the General Assembly in R.C. 3103.031, which manifests no duty for parents to support adult children. Because this ruling is contrary to that legislative policy, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

Legal Aid of Western Ohio and Byron K. Bonar, for appellant Schaefer.

John D. Brunner, for appellant Auglaize County Child Support Enforcement Agency.

Kravitz & Kravitz, L.L.C., Max Kravitz and Kort Gatterdam; S. Mark Weller, for appellee.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, and Diane Richards Brey, Deputy Solicitor, urging reversal for amicus curiae Attorney General of Ohio.

Michael K. Allen, Hamilton County Prosecuting Attorney, and David Kelley, Assistant Prosecuting Attorney, urging reversal for amicus curiae Hamilton County Prosecutor's Office.

Ohio State Legal Services Association and Michael R. Smalz, urging reversal for amici curiae Association for Children for Enforcement of Support and Ohio NOW Education and Legal Fund.

_____