**[Cite as *In re C.G.*, 2014-Ohio-664.]**

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. John W. Wise, J. |
| IN RE C.G. | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : | Case No. 2013 CA 00228 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                  Common Pleas, Family Court Division,
                                  Case No. 2013 JCV 00298


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           February 18, 2014


APPEARANCES:

For Mother-Appellant:                   For SCDJFS-Appellee:

MARY G. WARLOP                          JERRY COLEMAN
ABNEY LAW OFFICE, LLC                   STARK COUNTY DEPARTMENT OF
116 Cleveland Ave., NW, Suite 500       JOB AND FAMILY SERVICES
Canton, OH 44702                        221 – 3rd Street SE
                                        Canton, OH 44702

*Delaney, J.*

{¶1}   Mother-Appellant appeals the October 24, 2013 judgment entry of the Stark County Court of Common Pleas, Family Court Division, to grant permanent custody of her minor child to Appellee Stark County Department of Job and Family Services ("SCDJFS").

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother is the parent of C.G., born on May 29, 1998.[1]  C.G. did not reside with Mother until she was nine years old.  (T. 22).  Mother lost custody of C.G. in 2007 after a dependency, neglect, and abuse action based on Mother's substance abuse. The case resolved in March 2007 with legal custody of C.G. being granted to her maternal aunt.  (T. 43).  In 2009, the maternal aunt returned C.G. to her Mother's custody pursuant to an agreed entry.  (T. 43).

{¶3}   On January 15, 2013, SCDJFS filed a complaint with the Stark County Court of Common Pleas, Family Court Division, seeking temporary custody of C.G.  The complaint alleged C.G. to be a dependent, neglected, and/or abused child.  A shelter care hearing was held on January 15, 2013 and the trial court ordered C.G. into the emergency temporary custody of SCDJFS.

{¶4}   The original complaint was dismissed because of jurisdictional time limits. The complaint was refiled on March 29, 2013.  A shelter care hearing was held on April 1, 2013 and the trial court ordered C.G. into the emergency temporary custody of SCDJFS.

---

[1] The father of C.G. did not contest the grant of permanent custody to SCDJFS and does not separately appeal.  Father has terminal colon cancer.

{¶5} The adjudication hearing was held on June 14, 2013. Based on the evidence, the trial court determined C.G. was a dependent, neglected, and abused child. C.G. was ordered to continue in the temporary custody of SCDJFS. The trial court approved and adopted a case plan for Mother. Mother's case plan required Mother to complete the following: complete a parenting assessment at Melymbrosia, complete a drug and alcohol assessment at Quest, and follow the recommendations from each evaluation.

{¶6} On August 2, 2013, SCDJFS filed a motion for permanent custody of C.G. SCDJFS also filed a motion requesting the trial court conduct an in camera interview with C.G. The permanent custody hearing was held on October 17, 2013.

{¶7} Rachel Weingart, the SCDJFS ongoing worker assigned to C.G., testified at the hearing. Weingart testified regarding Mother's work on her case plan. Weingart stated Mother attended Quest for the interview portion of the assessment but refused to submit to any substance abuse testing. (T. 8-9). Mother was ordered by the trial court to submit to a hair follicle test at both the initial shelter care hearing and the second shelter care hearing. (T. 8). Mother refused to comply with the hair follicle test or urine screens. (T. 8, 21). Mother did not complete a parenting assessment. (T. 8). She attended the initial testing in January 2013 but did not go any further with the program. (T. 8). Mother stated her reasons for not going to appointments were her lack of transportation and the inclement weather. (T. 19). SCDJFS offered Mother bus passes. (T. 21-22).

{¶8} Weingart made efforts to help facilitate services for Mother, but Mother did not appear willing to engage with Weingart. (T. 9). Mother would not allow Weingart

come to her home. (T. 9). Weingart would speak to Mother before or after court hearings or on the phone. (T. 9).

{¶9} When C.G. came into custody, Weingart testified that C.G. appeared fearful of her mother and fearful of returning home. (T. 11). C.G. was on probation through the Juvenile Court due to an incident at her high school and the school principal. (T. 11). C.G.'s foster caregiver described that C.G. initially had difficulties and during an incident at the home, C.G. tried to harm herself. (T. 11). C.G. was admitted to Akron Children's Hospital for a week due to suicidal ideation. (T. 11). Weingart testified that services were offered to C.G. (T. 10). She had a trauma and loss evaluation from Northeast Ohio Behavioral Health. She is in weekly counseling and in a girls' counseling group. (T. 11).

{¶10} C.G. is in the tenth grade at a new high school and has not exhibited any behavioral problems. (T. 12). She is in band and has good grades. (T. 12). She gets along with her foster family. (T. 12).

{¶11} Mother testified at the hearing. She stated that there was no point in completing any of her case plan if her daughter was not going to come back home. (T. 19). Mother refused to be forced to do a drug screen "because of an angry spoiled 13 year old, 14 year old teenager." (T. 20). She admitted there were some physical altercations between her and C.G., maybe four months apart. (T. 20). Mother admitted C.G. witnessed domestic violence between Mother and her boyfriend. (T. 23).

{¶12} Becky Crookston, C.G.'s therapist with Northeast Ohio Behavioral Health, testified during the best interest phase of the hearing. (T. 26). Crookston works on trauma therapy with C.G. (T. 28). C.G. described violent altercations involving her

Mother. (T. 30). C.G. was in foster care when she began treatment and C.G. has seemed happier and more talkative to Crookston, which C.G. attributed to her environment. (T. 30). C.G. has expressed she has no desire to speak with Mother at all. (T. 31). Crookston has had counseling sessions with Mother. (T. 31). Mother made negative comments about C.G. and stated that C.G. was manipulative.

{¶13} Weingart testified that C.G. has made good progress after being placed in a therapeutic foster home. She caught up on her studies and is educationally on track in tenth grade. (T. 33). She plays an instrument in the school marching band. (T. 36). She has not had any recent behavioral problems since being placed in foster care. (T. 34). She stated they considered relative placement but no relatives were available for placement.

{¶14} The Guardian ad Litem testified and recommended that C.G. be placed in the permanent custody of SCDJFS. (T. 43, 44).

{¶15} The trial court conducted an in camera interview with C.G. on October 22, 2013.

{¶16} On October 24, 2013, the trial court granted permanent custody of C.G. to SCDJFS. It is from this decision Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶17} Mother raises two Assignments of Error:

{¶18} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE

THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

***I. and II.***

{¶20} Mother argues the trial court erred in granting permanent custody of C.G. to SCDJFS. We disagree.

{¶21} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court

must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶22} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶23} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶24} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶25} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶26} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶1} Our review of the record shows the trial court's decision regarding permanency and placement was supported by clear and convincing evidence. We further find it was in the best interests of C.G. that custody be terminated. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

{¶27} C.G. is a fifteen-year-old girl who has struggled her entire life with her relationship with her Mother. This Court has reviewed the October 22, 2013 in camera interview and agrees with the trial court's conclusion that C.G. appears to be an articulate and intelligent young lady who is trying to move forward with her life. Before her removal from Mother's home, C.G. was fighting in school and fighting with her Mother. C.G. considered harming herself. After her placement in a therapeutic foster home, C.G. has engaged in counseling, improved her behavior, and improved her grades. Her counselor states C.G. now seems happier. She makes eye contact and smiles. Her GAL remarked that she now "has a light inside her."

{¶28} Mother has not completed her case plan and has stated that she will not complete her case plan. She testified a "spoiled girl" would not force her into changing her behaviors. These behaviors have included substance abuse and domestic violence.

{¶29} C.G. articulated to the trial court that she wants to be adopted into a home. The trial court stated C.G. deserves to have the opportunity to be in a safe, caring, stable, and nurturing home. We agree.

{¶30} Mother's first and second Assignments of Error are overruled.

**CONCLUSION**

{¶31} The judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Delaney, J.,

Wise, P.J. and

Baldwin, J., concur.