[Cite as *In re N.G.*, 2013-Ohio-2715.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

N.G. (04/26/99); J.G. (11/25/00);
A.G. (01/25/01); J.G. (06/16/03);
T.G. (05/11/05; H.G. (02/13/07);
M.G. (08/18/08);

A.G. (08/16/10)

DEPENDENT CHILDREN

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case Nos. 13 CA 2 and 13 CA 3

O P I N I O N

CHARACTER OF PROCEEDING: Civil Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 10JC00350 and 10JC00460

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 26, 2013

APPEARANCES:

For Appellee

DANIEL PADDEN
139 West Eighth Street
Cambridge, Ohio  43725

Guardian Ad Litem

ANDREW WARHOLA
110 North 7th Street
Cambridge, Ohio  43725

For Appellant Mother

RONALD C. COUCH
121 West Eighth Street
Cambridge, Ohio  43725

For Father

CHARLES MCKNIGHT
121 West Eighth Street
Cambridge, Ohio  43725

For all Children except J.G. (11/25/00)

FEISUL KHAN
Post Office Box 273
Zanesville, Ohio  43702

*Wise, J.*

{¶1} Appellant-Mother Tina Gyles appeals from the December 27, 2012, decision of the Guernsey County Court of Common Pleas, Juvenile Division, granting permanent custody of her eight children to Appellee Guernsey County Children Services Board.

{¶2} These cases come to us on the expedited calendar and shall be considered in compliance with App.R. 11.2(C).

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶3} Appellant-Mother Tina Gyles and Father Matthew Gyles are the biological parents of N.G. (4/26199), J.G (11/25/00), A.G. (01/25/01), J.G. (6/16/03), T.G. (5/11/05), H.G. (2/13/07), M.G. (08/18/08), and A.G. (8/16/10).

{¶4} On April 17, 2010, Guernsey County Children Services Board (hereinafter "GCCSB") received a referral with concerns regarding the Gyles Children. (T. at 238). Specific concerns were reported after Guernsey County Law Enforcement received a 9-1-1 hang-up call from the Gyles Residence. *Id.* The sheriff's deputy who responded found that there were seven children in the home with no adult supervision (the parents were later located in a workshop on the same premises); a baby was observed on the floor with dried feces running up his back and no running water in the residence. (T. at 238-239). An eighth child (A.G.) would be born during the pendency of these cases.

{¶5} Caseworkers Maria Neiswonger and Elissa Mallett responded to the Gyles home. (T. at 239). The caseworkers found the Gyles residence was without a working bathroom. The family used a 5 gallon bucket and buried the waste in the yard, daily. Running water was limited to the kitchen and washing machine. *Id.* The family bathed

in a black rubber tub using water heated on the wood burner. Exposed wiring and a sheet of cardboard above the ceiling where the wood burner was located were also observed. *Id.* The home was also lacking central heat.

**{¶6}** The Guernsey County Health Department noted that there was: No indoor plumbing; No approved water source; No approved sewage disposal system; Exposed electrical wiring throughout (the residence); Poor insulation; Cardboard ceiling; Cardboard ceiling through which a high temperature stovepipe dissects; Filthy rugs, cat feces noted; No lighting throughout; No floor covering; bare plywood; No bathrooms.

**{¶7}** The family was eventually given five (5) days to remedy the health department findings, and when the improvements were not made, the home was declared unfit for habitation and condemned.

**{¶8}** Appellant-Mother was floridly psychotic at the time, having suffered a break down and being diagnosed with schizophrenia or bi-polar disease, for which she was prescribed Respidol. (T. at 247). However, mother would wean herself off of her medications during her pregnancies. *Id.*

**{¶9}** Upon removal from the home, the children were placed in a kinship placement with a paternal aunt and uncle in Coshocton County. (T. at 248).  This safety plan was recommended and agreed to by the parents. *Id.* At the time of the removal, the children had not seen a medical doctor and had not had any of their immunizations. The children had never had a dental check up, and the parents were opposed to any.

**{¶10}** On the day of the removal of the children from the home, Appellant-Mother was transported to the local mental health hospital. She was admitted for three days,

diagnosed with delusional thoughts, and referred to the local mental health agency for counseling and treatment. Appellant-Mother refused to follow up with the agency on her counseling and treatment.

{¶11} On June 16, 2010 a Complaint alleging neglect and dependency was filed in Guernsey County Common Pleas Court, Case No. 10JC00350, involving the seven oldest children.

{¶12} On July 13, 2010, the oldest children were placed in the emergency temporary custody of relatives of the parents with protective supervision to GCCSB.

{¶13} On August 16, 2010, the original date of the Adjudicatory hearing, Appellant- Mother gave birth to A.G., and the hearing originally scheduled for that date was continued.

{¶14} The youngest child, A.G., was born at home, as had been all the other children. That child was immediately removed from the custody of the parents before she was even a day old.

{¶15} The Court issued Ex-parte Orders and on August 17, 2010, a case was filed concerning A.G., Case No. 10JC00460. After this date, all hearings involved all the children and both pending cases.

{¶16} On September 13, 2010, the Adjudicatory hearing was held and the court found that all the children were dependent children.

{¶17} In October of 2010, the kinship caregiver contacted GCCSB and reported that the Children were disclosing information regarding events that occurred within the Gyles home. (T. at 489). The Children were questioned by GCCSB about their sexual knowledge, their sexually acting out, and whether they had been victims of any type of

sexual abuse. (T. at 486-487). The three oldest children reported observing their parents engage in sexual intercourse. The children, except for the youngest two, began participating in sexual offender/victim training programs tailored to their age.

**{¶18}** On November 4, 2010, the Court held a further Dispositional hearing.

**{¶19}** On November 10, 2010, a further Dispositional hearing was held and temporary custody with the relatives was terminated and temporary custody was placed with GCCSB.

**{¶20}** On July 12, 2012, a case plan was completed for the Gyles parents, which included, but not limited, to the following:

**{¶21}** 1. Parents to provide for the children's medical and mental health concerns.

**{¶22}** 2. Parents to provide a safe home environment for their children.

**{¶23}** 3. Parents to provide a structurally safe home environment for their children.

**{¶24}** 4. Parents to sign all requested releases of information.

**{¶25}** 5. Parents to cooperate with GCCSB and all referral services. (T. at. 480-.482).

**{¶26}** By an entry filed January 14, 2011, the Court placed the original seven (7) children and the infant born August 16, 2010, in the temporary custody of GCCSB. The children have been in the custody of GCCSB since that date.

**{¶27}** On January 19, 2011, the Case plan was amended, and a visitation plan for each child was added with visitation occurring based on a progressive visitation plan. (T. at 463).

{¶28} On June 23, 2011, GCCSB filed its first motion for Permanent Custody. The motion for permanent custody was scheduled to come before the court on the 18th day of October, 2011. The hearing was continued to the 12th day of December, 2011. At the time of the December 12, 201, hearing, the court was informed that the parents had completed the installation of the sanitary sewer system and had installed a bathroom in the residence. GCCSB moved to dismiss the permanent custody motion. The Motion was dismissed and temporary custody was continued with GCCSB for a second six months from January 10, 2012 to allow for an orderly return of the children to their home. The children, except for the youngest two, were continued in a sexual offender/victim training program commensurate with their age.

{¶29} During the succeeding six months, all of the children except for J.G. and the two youngest refused to engage in preparatory visits to return home. The two youngest children's refusal was presented to the court through the GAL or CASA or the child's attorney.

{¶30} On February 2, 2012, GCCSB spoke to Appellant-Mother about the "Incredible Years" parenting class, and how it would help assist her and reduce stress with dealing with the children. (T. at 491). Parents failed to participate in this training.

{¶31} On February 21, 2012, GCCSB performed a home visit with the parents. At the time, GCCSB reported having concerns with the various building materials and other debris scattered about the yard, along with 15-20 weapons and a tank with 3 snakes located in the Parents' bedroom. (T. at 501-502).

{¶32} On June 14, 2012, GCCSB filed the current Motion for Permanent Custody upon expiration of the second, six-month extension of temporary custody with the agency.

{¶33} The hearing was held in the Guernsey County Court of Common Pleas, Juvenile Division, on September 24, and 25, 2012, and was continued to December 11, and 12, 2012.

{¶34} At the hearing, the trial court heard testimony that throughout the case plan, the parents worked on the components of the case plan to varying degrees of success. Appellant-Mother has only been lucid for the last half of the GCCSB's involvement. During the pendency of these cases, Appellant-Mother was hospitalized twice for her mental illness.

{¶35} The children revealed their displeasure with the Father's financial decisions. Father, throughout the time span of this case, would spend any additional money that came into his possession upon items he wanted, such as weapons and snakes. (T. at 673-674, 812-813). The children thought that money should have been used to repair the home instead.

{¶36} As of June, 2012, the overall and continuing concerns observed during family visitation were a general lack of supervision; parents ignoring the children when they are speaking to them; and the older children being placed in parenting roles. As of the date of the permanent custody hearing, the visits had not progressed past supervised visitation. (T. at 403).

{¶37} At the time of the hearing, the oldest child had declared he was not going home again. The second oldest child wished to return home. (T. at 810). The middle

four children did not want to go home. (T. at 788). The trial visits with the children in the parents' home, once it was cleared of some of the safety concerns, were not successful. Some of the children would refuse to visit, and supervision remained a continuing concern as Appellant-Mother was unable to supervise even three of the children at once. (T. at 813-814).

{¶38} The caseworker testified that reunification was not possible within a reasonable time due to the history and the parents' inability to complete the objectives of the case plan. (T. at 528-529).

{¶39} CASA further recommended that permanent custody be awarded in this matter. (T. at 809). Based on the history, she believed that the best interest of the children was permanent custody, and that the children were in need of a legally secure placement (T. at 529-530).

{¶40} At the conclusion of the hearing, the minor children were determined to be dependent children, and Permanent Custody of the children was granted to GCCSB.

{¶41} The Trial Court memorialized its finding by an Entry, time-stamped December 27, 2012, which included findings of fact and conclusions of law.

{¶42} Appellant-Mother filed the instant appeals, and this matter is now before this Court for consideration. Assignments of Error are as follows:

<u>ASSIGNMENTS OF ERROR</u>

{¶43} "I. THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE PLACED BACK IN THE HOME WITH THE MOTHER IN A REASONABLE AMOUNT OF TIME UNDER O.R.C. § 2151.414 (B) (2).

**{¶44}** "II. THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN UNDER O.R.C. §2151.414(D).

**{¶45}** "III. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT GUERNSEY COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL RIGHTS SHOULD BE TERMINATED."

**I., II., III.**

**{¶46}** We consider Appellant-Mother's Assignments of Error together because they are interrelated. Mother argues the trial court erred in granting permanent custody of her minor children, and the decision was not in the child's best interest. We disagree.

**{¶47}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equipment Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶48}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the

parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St .3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶49}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶50}** Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶51}** In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of

the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶52} Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶53} In this case, the trial court found by clear and convincing evidence the children had been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period pursuant to R.C. §2151.414(B)(1)(d). Appellant-Mother does not challenge the trial court's finding. This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

{¶54} The trial court found the minor children in this case could not be placed with Appellant-Mother or Father within a reasonable time or should not be placed with either parent. If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. §2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or

more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶55} Here, the trial court found that notwithstanding the reasonable case planning and diligent efforts of GCCSB to assist Appellant-Mother to remedy the problems that initially caused the children to be placed outside the home, Appellant-Mother failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside of the home. R.C. §2151.414(E)(1).

{¶56} Appellant-Mother argues the evidence shows she was substantially compliant in some areas and making significant progress in other areas. The evidence shows Appellant-Mother substantially complied with the case plan requirements, but the statute provides that she substantially remedy the conditions that caused her children to be placed outside of the home. Appellant-Mother attended mental health counseling for a period of time, but Mother had no independent source of income

{¶57} The trial court further found that the family's ability to care for all of the children alone had not been demonstrated. The trial visits with the children in the parents home were not successful. The majority of the children who were able to speak their minds refused the visits all together or would agree to only one visit a month. According to the GCCSB monitor, the mother was not able to adequately supervise the three youngest children upon a visit to the mother with only four of them present.

{¶58} We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination

will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

**{¶59}** In this case, the trial court determined it was in the best interest of the child to be placed in the permanent custody of GCCSB pursuant to R.C. §2151.414(D), and we agree.

**{¶60}** The trial court herein considered the wishes of the children. The GAL reported, and it was not disputed by the counsel for the children, that five of the six oldest children do not want to go home with their parents. The child J.G. (11/25/00) wants to go home. The CASA volunteer reports that she thinks he will not have to go to school in that event. With regard to each child, the trial court found:

**{¶61}** N.G. does not want to go home and is refusing to go home.

**{¶62}** J.G. wants to go home, but for all the wrong reasons. The child feels that he will not be forced to go to school, and he will not be sanctioned or forced to go to any sexual predator training.

**{¶63}** A,G., J.G., J.G., and H.G. do not want to go home. The GAL is concerned that if forced to go home they would sabotage the placement.

**{¶64}** M.G. and A.G. are the two youngest children. MG., at age four, has not had much interaction with his parent in the past over two and one half years. A.G. is the baby and has been in placement since birth. These two children, when together, require constant supervision as M.G. is inclined to violence against his younger sibling, A.G. Appellant-Mother has not paid any attention to these two infants during her visits with the children.

**{¶65}** Based on the foregoing, we find that the trial court decision finding that the children could not or should not be placed with Appellant-Mother within a reasonable period of time was not against the manifest weight of the evidence,and that the grant of permanent custody to the agency was in the child's best interest.

**{¶66}** Appellant-Mother's Assignments of Error are overruled.

**{¶67}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 0619

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| N.G. (04/26/99); J.G. (11/25/00); | : | JUDGMENT ENTRY |
| A.G. (01/25/01); J.G. (06/16/03) | : | |
| T.G. (05/11/05); H.G. (02/13/07) | : | |
| M.G. (08/18/08) | : | |
| | : | |
| A.G. (08/16/10) | : | |
| | : | Case Nos. 13 CA 2 and |
| DEPENDENT CHILDREN | : | 13 CA 3 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is affirmed.

Costs assessed to Appellant.

_____

_____

_____

JUDGES