[Cite as *In re S.S.*, 2014-Ohio-466.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. John W. Wise, J. |
| IN RE S.S. | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 2013CA00184 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2012JCV00647 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | January 31, 2014 |

APPEARANCES:

| | |
|---|---|
| For Mother-Appellant: | For SCDJFS-Appellee: |
| JENNIFER A. ROBERTS | LISA LOUY |
| 401 W. Tuscarawas St., Suite 300 | 221 Third St. SE |
| Canton, OH 44702 | Canton, OH 44702 |

*Delaney, J.*

{¶1}   Mother-Appellant appeals the August 20, 2013 judgment entry of the Stark County Court of Common Pleas, Family Court Division terminating her parental rights to her minor child, S.S.   Appellee is the Stark County Department of Job and Family Services ("SCDJFS").

## FACTS AND PROCEDURAL HISTORY

{¶1}   Mother-Appellant is the mother of S.S., born on June 30, 2012.  The father of S.S. did not appear in the action nor does he appeal the disposition.  Mother has two older children.  One child resides in Florida with his father.  Mother's parental rights were terminated as to the second child.  See, *In the Matter of K.C.,* 5th Dist. Stark No. 2011-CA-259, 2012-Ohio-1162.

{¶2}   On July 3, 2012, SCDJFS filed a complaint alleging S.S. was a dependent and/or neglected child and sought temporary custody of S.S. to be granted to SCDJFS. On August 29, 2012, the trial court found S.S. to be a dependent child and granted SCDJFS temporary custody of S.S.  S.S. was placed in a foster home where her older sister already resided.

{¶3}   SCDJFS developed a case plan requiring Mother to obtain a parenting assessment with Northeast Ohio Behavioral Health, completion of Goodwill parenting classes, and demonstration of her ability to meet the needs of the child through stable housing and income.

{¶4}   On May 24, 2013, SCDJFS filed a motion for permanent custody.  On May 27, 2013, Mother filed a Motion to Return, or in the alternative, Motion to Extend and a

Motion for Planned Permanent Living Arrangement. The trial court dismissed the Motion for Planned Permanent Living Arrangement.

{¶5} The trial court held a trial on the motion for permanent custody on August 8, 2013. The following evidence was adduced at trial.

{¶6} Mother completed the parenting evaluation with Dr. Aimee Thomas at Northeast Ohio Behavioral Health. Dr. Thomas could not offer any recommendations that would help Mother to gain reunification of S.S. Dr. Thomas administered the Warstler Adult intelligence scale to Mother and the test showed Mother's full scale I.Q. level was 69. There was no doubt in Dr. Thomas that Mother loved her children, but Dr. Thomas felt Mother's cognitive abilities made it difficult for Mother to adapt to the parental needs of a growing child. Dr. Thomas was concerned by Mother's naivety and gullibility as to her relationships with men. Dr. Thomas felt Mother's vulnerability made it difficult for Mother to protect herself or her young child from a potential threat. It did not appear to Dr. Thomas that Mother recognized her intellectual deficits and would not ask for assistance, nor did Mother have an adequate support network to assist her. Dr. Thomas recommended Goodwill parenting classes to assist Mother during her visitation with S.S. Dr. Thomas also recommended individual counseling to help Mother cope with the loss of custody of her children.

{¶7} Mother successfully completed her parenting classes at Goodwill. This was her fourth parenting class. Mother visited with S.S. as part of the Goodwill parenting classes. During the visitation, Mother appeared to have difficulty prioritizing the needs of the child. She was observed changing the diaper of S.S. three or four times within an hour or interrupting her feeding to change her clothes.

{¶8} Vicky Mitchell, Mother's caseworker, testified at trial. Mother has appropriate housing and income through SSI. The caseworker expressed two concerns for Mother's ability to parent S.S. She first felt that Mother did not have the ability to keep herself and her child safe from inappropriate people. The fathers' of Mother's children have criminal histories. The father of her second child was married and HIV positive. Second, the caseworker was not sure Mother had the intellectual capacity to adapt to the changing needs of the child or to respond to an emergency.

{¶9} S.S. responded to Mother during visitation but did not express a bond to Mother. S.S. was placed in a foster home with her older sister. She is bonded with her sister and foster parents. The foster parents are interested in adopting S.S. S.S. is a healthy child. The caseworker testified it would be in the best interests of S.S. that Mother's parental rights be terminated and permanent custody granted to SCDJFS.

{¶10} The guardian ad litem recommended that permanent custody be granted to SCDJFS.

{¶11} On August 20, 2013, the trial court granted permanent custody of S.S. in favor of SCDJFS. It is from this decision Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶12} Mother raises three Assignments of Error:

{¶13} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY.

{¶14} "II. THE TRIAL COURT ERRED BY FINDING GROUNDS FOR PERMANENT CUSTODY AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} "III. THE TRIAL COURT ERRED BY DISMISSING MOTHER'S MOTION FOR PPLA AS SUCH DISPOSITIONAL ALTERATIVE WAS AVAILABLE TO THE TRIAL COURT."

**ANALYSIS**

*I. and II.*

{¶16} Mother argues in her first and second Assignments of Error the trial court erred in granting permanent custody to SCDJFS. We disagree.

{¶17} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶18} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶19} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶20} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶21} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will

usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶22} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶23} Our review of the record shows the trial court's decision regarding permanency and placement was supported by clear and convincing evidence.

{¶24} While Mother completed all aspects of her case plan, those individuals working with Mother on her case plan testified to serious concerns with Mother's parenting abilities. Dr. Thomas testified that due to Mother's cognitive deficits, Mother was unable to respond sufficiently to the needs of a growing and changing child. Mother's caseworker and Goodwill instructor made similar observations based on their interactions with Mother and S.S. Dr. Thomas testified she found Mother to be a vulnerable person whom had difficulty protecting herself. Dr. Thomas was concerned that Mother would not be able to protect her child as well. Mother's caseworker

reiterated that Mother's vulnerability caused her to make poor choices in her relationships as seen by her previous relationships.

{¶25} Mother had her parental rights involuntarily terminated with respect to one sibling of S.S. The trial court noted in its decision that while Mother substantially worked through her case plan as to the sibling, Mother's parenting assessment indicated that because of her cognitive deficits, Mother would continue to have problems dealing with the day-to-day issues and could not safely independently care for a child. In the present case, we find clear and convincing evidence that, notwithstanding the prior termination, Mother has not remedied that issue to show she can provide a legally secure placement and adequate care for the health, welfare, and safety of the child. R.C. 2151.414(E)(11).

{¶26} We next turn to the issue of best interests. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of the child to be placed in the permanent custody of SCDJFS pursuant to R.C. 2151.414(D), and we agree.

{¶27} S.S. is placed in a foster home and they are interested in adopting S.S. The sibling of S.S. resides in the foster home, with whom S.S. has developed a strong bond. S.S. also has a bond with her foster parents.

{¶28} The guardian ad litem recommended that permanent custody be granted to SCDJFS.

{¶29} Mother's visitations with S.S. were on the whole successful. There is no doubt Mother loves S.S, but her cognitive limitations and lack of support network hinder her ability to make good choices for herself and her growing child. The trial court found, and we agree, the benefits of permanency to S.S. outweigh the detriments to severing the bond between S.S. and Mother.

{¶30} Mother's first and second Assignments of Error are overruled.

*III.*

{¶31} Mother argues in her third Assignment of Error the trial court erred in dismissing her Motion for Planned Permanent Living Arrangement.

{¶32} "A 'planned permanent living arrangement' is defined as a placement that gives legal custody to an agency without terminating parental rights and that allows the agency to make an appropriate placement, including foster care or other placement." *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 24 citing R.C. 2151.011(B)(36). A planned permanent living arrangement is one of the dispositions available to the juvenile court upon an adjudication that a child is abused, neglected, or dependent. R.C. 2151.353(A).

{¶33} R.C. 2151.415 also provides for a planned permanent living arrangement. R.C. 2151.415(A) states that a "a public children services agency * * * that has been given temporary custody of a child pursuant to section 2151.353 of the Revised Code, not later than thirty days prior to the earlier of the date for the termination of the custody order pursuant to division (G) of section 2151.353 of the Revised Code or the date set

at the dispositional hearing for the hearing to be held pursuant to this section, shall file a motion with the court that issued the order of disposition requesting that any of the following orders of disposition of the child be issued by the court: * * * An order that the child be placed in a planned permanent living arrangement." The statute further states that "if an agency pursuant to division (A) of this section requests the court to place a child into a planned permanent living arrangement, the agency shall present evidence to indicate why a planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible dispositions for the child." R.C. 2151.415(C)(1).

{¶34} After SCDJFS filed its Motion for Permanent Custody, Mother filed her Motion for Planned Permanent Living Arrangement. The trial court dismissed Mother's motion because, under statute, the trial court may consider a planned permanent living arrangement only if the children's services agency has filed a motion requesting such disposition.

{¶35} Mother argues that pursuant to an interpretation of the statutes allowing planned permanent living arrangements, the trial court may consider a planned permanent living arrangement requested by a party other than the children's services agency. We disagree with Mother's argument based on the authority of *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187. In that case, the Ohio Supreme Court found R.C. 2151.353(A)(5) was unambiguous and did not authorize the trial court to consider a planned permanent living arrangement unless the children's services agency filed a motion requesting such a disposition. *Id.* at ¶ 37. The Court based its decision on R.C. 2151.353 and 2151.415.

{¶36} In this case, SCDJFS did not request a planned permanent living arrangement. Pursuant to *In re A.B.*, the trial court could not consider that disposition.

{¶37} Mother's third Assignment of Error is overruled.

## CONCLUSION

{¶38} Mother's three Assignments of Error are overruled.

{¶39} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Wise, J., concur.