[Cite as *In re J.W.*, 2014-Ohio-2950.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| WEST / MITCHELL CHILDREN | : | |
| J.W. | : | Hon. William B. Hoffman, P.J. |
| A.M. | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 2014CA00032 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2011JCV00254 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | June 16, 2014 |

APPEARANCES:

| For Plaintiff-Appellee: | For Defendant-Appellant: |
|---|---|
| STARK COUNTY D.J.F.S. | JENNIFER ROBERTS |
| LISA A. LOUY | 401 West Tuscarawas St. Suite 300 |
| 221 Third Street S.E. | Canton, OH 44702 |
| Canton, OH 44702 | |

*Delaney, J.*

{¶1}   Appellant S.W. ("Mother") appeals from the February 3, 2014 Judgment Entry and Findings of Fact and Conclusions of Law of the Stark County Court of Common Pleas, Family Court Division.  Appellee is the Stark County Department of Job and Family Services ("Agency").

{¶2}   This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

## FACTS AND PROCEDURAL HISTORY

{¶3}   Mother has three children:  J.W. (DOB. March 6, 2005), A.M. (age 4),[1] and Z.M. (age 1 ½).  This appeal concerns only J.W.  Mother does not have custody of A.M. and Z.M. because she consented to a change of legal custody of those children to an aunt in Chicago.  The father of J.W. is not a party to this appeal.

{¶4}   Mother became involved with the Agency in 2009 upon the birth of one of J.W.'s siblings.  In March 2010, Mother was arrested for theft and drug possession and served five days in jail.  Afterward she sought drug treatment but in February 2011 she was arrested for O.V.I. and possession of drug paraphernalia, resulting in a jail term of 10 days.

{¶5}   The Agency filed a complaint alleging J.W. to be dependent and/or neglected on February 24, 2011.  A shelter care hearing was held on February 25, 2011 and J.W. was ordered into the Agency's temporary custody.

{¶6}   J.W. was found to be dependent on May 24, 2011.  The trial court placed J.W. in the temporary custody of the Agency, found the Agency made reasonable

---

[1] Although the case caption references A.M., Mother does not contest the change of legal custody of A.M.

efforts to prevent the need for removal of the child from the home and approved and adopted a case plan.

{¶7}   Mother worked case plan services and J.W. returned to Mother's home on extended visits.  On March 1, 2012, J.W. was returned to Mother's custody subject to protective supervision.  The family's caseworker testified that at this point in time, Mother had done very well with her case plan; she completed Goodwill Parenting and Quest alcohol and drug treatment.

{¶8}   Also in March 2012, however, Mother was again charged with drug possession and possession of drug paraphernalia.  Mother did not advise the Agency of this arrest.

{¶9}   Mother also began testing positive for drugs and had more drug-related arrests.   Mother's arrests continued with a probation revocation in August, 2012 resulting in her incarceration in a community-based corrections facility.  Mother was released in December 2012 but tested positive for cocaine in April 2013 and November 2013.  Mother's probation was revoked and she was placed in SRCCC, where she remained at the time of trial.

{¶10} On June 18, 2012, J.W. was returned to temporary custody of the Agency because of Mother's arrest.

{¶11} On July 17, 2012, the trial court reviewed the case and found the Agency made reasonable efforts to finalize permanency planning for J.W. and compelling reasons precluded a filing for permanent custody.  Temporary custody was extended while the Agency considered possible relative placements.

{¶12} On March 8, 2013, J.W. was placed in a Planned Permanent Living Arrangement (PPLA) to permit interstate home studies to be completed for a relative in Chicago, the aunt who obtained legal custody of J.W.'s siblings. Eventually, though, placement in Chicago did not work out and J.W. returned to Stark County foster care.

{¶13} On November 18, 2013, the Agency moved for permanent custody as to J.W. only.

{¶14} The trial court heard evidence on January 30, 2014.

{¶15} Evidence at trial established Mother was presently serving a criminal sentence at the Stark Regional Community Correction Center (SRCCC) and was not due to be released until mid-March. SRCCC is a prison alternative; upon release, Mother would still be on felony probation and violations thereof could result in new criminal charges or prison time. Although Mother did well at SRCCC, upon her release she would have no independent housing and her discharge would include housing at the YWCA. In SRCCC Mother was involved in counseling for anger management, victim awareness, and chemical dependency.

{¶16} At the time of trial, Mother had not been in touch with the caseworker for approximately two months.

{¶17} Mother acknowledged she remains a drug addict despite numerous attempts and opportunities to obtain treatment. She acknowledged the traumatic effect her drug abuse has had on J.W. and agreed he needs and deserves a permanent, stable family environment. She testified she has not been the mother her son deserves and said she wants him to know she never gave up on him and loves him very much.

{¶18} J.W. is an 8-year-old Caucasian boy with no medical issues. He has been diagnosed with A.D.H.D. and is medicated for that condition; he is sometimes impulsive and acts out, requiring redirection. These conditions have improved in the time J.W. has been in foster placement, which is a loving, positive, supportive environment that is very structured.

{¶19} J.W. last saw Mother in late August or early September 2013 after he returned from Chicago. His visits with Mother revealed the two are definitely bonded, although Mother was frequently crying and upset during the visits and had to be instructed to keep her composure. During one visit at a McDonald's Playland, Mother climbed into the playground equipment with J.W. and sat with him, crying.

{¶20} J.W.'s caseworker testified in her opinion it is in J.W.'s best interest for permanent custody to be granted to the Agency, despite the bond with Mother, because the risk of repeating Mother's pattern of substance abuse is too high. The limited interaction J.W. has with Mother makes him nervous and uncomfortable. He is old enough to be aware of and to describe aspects of Mother's behavior that make him uncomfortable, including her distress during visits. J.W. told the caseworker about Mother's behavior while she was using, often falling down or asleep, requiring him to care for his younger sister. He told his foster mother he loves his mom and remembers being with her for better and for worse. J.W. has already suffered the loss of his siblings and, in the caseworker's estimation, struggles with the fact he will not be living with them in Chicago.

{¶21} J.W. has been in the same foster placement each time he has been in Agency custody. His foster family has been licensed for a long time and has fostered

many children, some of whom they have adopted.  Adoption of J.W. is a possibility.  He has many siblings of a wide age range in the foster family and the home is described as a very structured environment.  He refers to his foster parents as "Mom" and "Dad."

{¶22} A relative who lives in Michigan contacted the Agency at one point to inquire about custody of J.W.  The caseworker explained the interstate home study process and although the relative initially expressed some hesitation, immediately prior to the permanent custody hearing she did request that a home study be initiated.

{¶23} Upon inquiry by the trial court, the guardian ad litem stated he agreed J.W.'s best interests are served by granting permanent custody to the Agency.

{¶24} The trial court journalized its findings of fact and conclusions of law on February 3, 2014.  The trial court terminated Mother's parental rights and granted permanent custody of J.W. to the Agency.

{¶25} Mother now appeals from the trial court's Judgment Entry and Findings of Fact and Conclusions of Law.

{¶26} Mother raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶27} "I.  THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY."

{¶28} "II. THE TRIAL COURT ERRED BY FINDING GROUNDS FOR PERMANENT CUSTODY AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶29} Mother's two assignments of error are related and will be considered together. Mother argues the trial court's decision to grant permanent custody to the Agency is not in J.W.'s best interest and is against the manifest weight of the evidence. We disagree.

{¶30} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477.

{¶31} If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶32} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶33} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶34} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶35} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will

usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶36} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶37} In this case the trial court found J.W. was abandoned by Mother based upon her lack of contact with him for more than 90 days [R.C. 2151.414(B)(1)(b)] and J.W. was in the temporary custody of the Agency for a period in excess of twelve months during a consecutive 22-month period [R.C. 2151.414(B)(1)(d)]. These findings are supported by clear and convincing evidence and Mother does not challenge them.

*R.C. 2151.414(E) Factors: Clear and Convincing Evidence*

{¶38} The trial court also found J.W. could not be placed with Mother within a reasonable time or should not be placed with Mother, a finding Mother challenges. If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence

before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.[2]

{¶39} The trial court found that notwithstanding the reasonable case planning and diligent efforts of the Agency to assist Mother to remedy the problems that initially caused J.W. to be placed outside the home, Mother failed to remedy the conditions causing J.W. to be placed outside of the home. R.C. 2151.414(E)(1). Mother argues she substantially complied with case plan services and almost completed SRCCC, which she describes as "intensive inpatient treatment." While evidence does show Mother substantially complied with the case plan requirements, the statute provides she must substantially remedy the conditions that caused her child to be placed outside of the home. We are compelled to find Mother's cycle of treatment and relapse still poses a high risk to the safety and stability of J.W.

{¶40} The trial court commended Mother's attempts at battling her addiction, as do we, but noted the cycle of substance abuse continues. Mother has relapsed in the past and the initial concerns that led to Agency involvement three years ago have not been alleviated. Despite completion of Goodwill Parenting and Quest treatment for substance abuse, Mother again tested positive for drugs and was arrested for drug-related activity. Her substance abuse has led to criminal activity and time spent in jail and prison alternatives. The risks to J.W. have not lessened. Upon release from

---

[2] The trial court also found J.W. could not be placed with his father, J.S., within a reasonable time or should not be placed with him within a reasonable time. J.S. is not a party to this appeal.

SRCCC, Mother will not have independent housing.  Although Mother's case manager at SRCCC testified she is doing well in the program, she only monitors Mother's progress based upon reports from Mother's various counseling programs.   Another relapse will result in prison.

{¶41} We find the trial court's decision is supported by the evidence presented under R.C. 2151.414(E)(1).

*Best Interests of J.W.*

{¶42} We next turn to the issue of best interests. We have frequently noted "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of the children to be placed in the permanent custody of the Agency pursuant to R.C. 2151.414(D) and we agree.

{¶43} J.W. deserves safety, stability, and permanence.  We do not question Mother's demonstrated love for J.W.; she acknowledges her addiction and profoundly regrets the trauma it has caused for J.W.  Unfortunately, though, the record of this case demonstrates J.W. has been removed twice due to Mother's relapses, the second time despite the availability of case plan services.  His foster placement is positive for him and provides structure, love, and support he needs.  We acknowledge J.W. is suffering not only the loss of his Mother but also the loss of his siblings who remain in Chicago.

Permanent custody will permit the upheaval and trauma to end. Allowing Mother more time to complete drug treatment is not in J.W.'s best interest.

{¶44} We conclude the trial court did not err in finding J.W. cannot or should not be placed with Mother within a reasonable period of time and the grant of permanent custody to the Agency is in the child's best interests.

{¶45} Mother's first and second assignments of error are overruled.

## CONCLUSION

{¶46} Mother's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Delaney, J. and

Hoffman, P.J.

Farmer, J., concur.