[Cite as *In re K.B.*, 2015-Ohio-3725.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: K. AND D.B. AND L.F. | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| NEGLECTED/DEPENDENT | : | Hon. John W. Wise, J. |
| CHILDREN | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 2015AP050021 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division, Case No. 13JN00223

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     September 11, 2015

APPEARANCES:

For Appellant David Blackwell:
MARK PERLAKY
111 W. Main St.
Newcomerstown, OH 43832

Guardian Ad Litem:
KAREN DUMMERMUTH
349 East High Ave.
P.O. Box 494
New Philadelphia, OH 44663

For Appellee Tuscarawas Co. DJFS:
KAREN ROSS QUINLAN
389 16th St. S.W.
New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellant David Blackwell appeals from the April 3, 2015 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, placing K.B. in the permanent custody of appellee Tuscarawas County Job & Family Services (the "Agency").

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Nicole Elkins ("Mother") is the biological mother of three children: K.B. (D.O.B. 10/22/09), D.B., and L.F.[1]   Appellant is the biological father of K.B.   Mother stipulated placement of the children with the Agency was in the children's best interest and is not a party to this appeal.

{¶3}   Appellant and Mother were in a relationship for several years but were not married.   They lived together in Alaska while appellant was in the Army; Mother returned to her home state of Connecticut for K.B.'s birth in 2009 because appellant was deployed.   Appellant was a Blackhawk mechanic and served in Iraq.   Due to an incident of underage drinking and a period spent AWOL, appellant was demoted and eventually discharged from the Army, albeit "under honorable conditions."

{¶4}   The relationship between appellant and Mother was fraught with domestic violence beginning in Alaska and continuing upon their eventual return to Ohio. Appellant was convicted of three domestic violence offenses against Mother including a fourth-degree felony violation when Mother was eight months pregnant.   This offense resulted in appellant's incarceration in a community-based corrections facility,

---

[1] The trial court also awarded permanent custody of D.B. and L.F. to the Agency in the underlying order.   Those children have different fathers and their custody is not at issue in this appeal.

S.R.C.C.C. Mother obtained a protective order against appellant which is still in effect and expires in June 2017. Appellant and Mother have no relationship currently and had no contact during the pendency of this case. Appellant now lives with a girlfriend, her children, and the child they have together.

{¶5} In light of the domestic violence history and protective order, appellant did not have any contact with K.B. for a period of two and a half years beginning in November 2011. Sometime in 2012, appellant reportedly attempted to seek visitation with K.B. in Wayne County, where Mother lived at the time. Appellant testified he agreed to issuance of the protection order against him on the condition he would be allowed to seek visitation with K.B.

{¶6} Appellant would not have any contact with K.B. however, until April 22, 2014.

{¶7} During the interim, Mother lived in Tuscarawas County with the children and the Agency was intermittently involved with the family, culminating in the events of late May, 2013. At that time, D.B. was admitted to the hospital for respiratory problems. The hospital was unable to locate Mother for a meeting about the child's condition and called police. Mother's home was subsequently found to be in deplorable condition, described as filthy and flea-infested.

{¶8} At the shelter care hearing on June 3, 2013, Mother was granted supervised visitation and no visitation was ordered for any of the fathers, including appellant. At the adjudication on July 3, 2013, the children were found to be neglected and dependent. Mother and appellant were ordered to comply with the Agency's case plan.

{¶9} Appellant petitioned for visitation with K.B. on February 25, 2014 and was granted supervised visitation at the Agency, resulting in a total of 17 visits between K.B. and appellant. Appellant terminated the visits because his work schedule at the time did not permit him to have visitation time on Mondays. Agency workers provided information on other locations for supervised visitation including at "P.F.C.S." Supervised visits at P.F.C.S. could have been paid for by the Agency if appellant had provided requested pay stub verification. Had appellant paid for the visits on his own, the visits would have cost between $35 and $50 on a sliding scale.

{¶10} Appellant's last visit with K.B. was on September 15, 2014.

{¶11} During the pendency of the case, appellant made some progress on the case plan, countermanded by his failure to follow through. He obtained a psychological evaluation, but did not follow up with verifiable individual counseling. At different times appellant was employed and purportedly working 12 hours a day, six days a week, but by the time of the permanent custody hearing he was unemployed, having been fired for harassing another employee. At the time of the hearing appellant was living with his girlfriend in an apartment in Strasburg, but this was preceded by long periods of unstable housing involving intermittent stays in a number of locations, evictions, and homelessness.

{¶12} Appellant's current living situation is with his girlfriend, Nora, their two children together, and one child of Nora's. Appellant has admitted to caseworkers that Nora is the primary caretaker when he is working but needs help managing the children. There was some evidence that Nora told a worker she was overwhelmed with the children already present in the home, absent K.B.

{¶13} Appellant acknowledged his history of domestic violence against Mother but pointed out he successfully completed probation and has not had a criminal offense since 2012. Nevertheless, when asked to describe each incident during the permanent custody trial, he minimized his culpability and deflected blame on Mother. Appellant completed anger management treatment at Melymbrosia but it took him two and a half years to do so.

{¶14} Positive evidence at the hearing included the testimony of the family service aide who provided individual parenting counseling to appellant and Nora. The aide testified she observed real progress in appellant's parenting skills and in his relationship with K.B.; appellant willingly asked her advice about parenting issues and followed through with her recommendations.

{¶15} Just as the relationship with K.B. was getting on the right track, however, appellant terminated the Monday visitations because of his work schedule.

{¶16} Evidence showed Agency workers told appellant he could have supervised visitation at other approved locations during times that would work with his schedule. Appellant testified he was not able to pay for those visits. Testimony established, though, that if appellant had verified his income with pay stubs, the cost of visitation at the other locations would be covered in whole or in part. Even if appellant paid for the visits out of pocket, the visits would cost $35 to $50 each. Evidence also established appellant had income that would have allowed him to meet these costs, and the Agency and guardian ad litem worked with him to establish a budget, but appellant did not follow through with steps necessary to establish another location for visitation.

{¶17} Ultimately visitation was denied because the Agency determined too much time had elapsed since appellant last saw K.B.

{¶18} The Agency filed a motion to modify disposition on November 7, 2014 and a hearing was held on March 26, 2015. The trial court awarded permanent custody of all three children to the Agency by Judgment Entry dated April 3, 2015.

{¶19} It is from this decision appellant now appeals.

{¶20} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶21} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD [K.] COULD NOT BE PLACED WITH FATHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

**ANALYSIS**

{¶22} Appellant argues the trial court should not have awarded permanent custody of K.B. to the Agency. We disagree. This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

{¶23} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief

or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶24} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶25} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶26} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's

parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶27} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶28} In this case, the trial court found K.B. has been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period. As we have previously noted, pursuant to R.C. 2151.414(B)(1)(d), this finding alone is sufficient to affirm the grant of permanent custody to the Agency. *In re D.R.*, 5th Dist. Ashland No. 14-COA-021, 2014-Ohio-5658, ¶ 30. The trial court's conclusion on this point is supported by clear and convincing evidence; the children were placed in temporary custody on June 3, 2013 and adjudicated neglected and dependent on July 3, 2013. [Mother regained custody on June 23, 2014, but this interlude lasted only until July 31, 2014.] The children have remained in Agency custody since July 31, 2014 and the motion for permanent custody was filed on November 7, 2013. Appellant does not contest this finding.

{¶29} Appellant *does* dispute the trial court's finding the child cannot be returned within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶30} The trial court determined that K.B. could not be placed with appellant within a reasonable time pursuant to R.C. 2151.414(E)(1), which requires the following findings:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made

available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶31} A review of the record supports the trial court's decision that K.B. cannot be placed with appellant within a reasonable time. (We note K.B. was not removed from appellant's home but from Mother's, having not had meaningful contact with appellant for some time). Appellant took steps to address his anger management but missed a significant number of group therapy sessions. His attendance at individual counseling at P.F.C.S. was sporadic. His employment history is also sporadic. The Agency made repeated efforts to keep appellant on track but he was unable or unwilling to produce income verification. The hearing also established appellant's readiness to blame others and become angry when the fault lies with his own "lack of initiative," as described in his psychological evaluation. Ultimately, we agree that K.B. cannot be placed with appellant within a reasonable period of time.

{¶32} We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of K.B. to be placed in the Agency's permanent custody and we agree.

{¶33} K.B.'s relationship with appellant consists of 17 supervised visits. Unfortunately the evidence established those visits were insufficient to create a

meaningful bond between K.B. and appellant. K.B. is currently placed in foster care together with the only siblings he has ever known.[2] K.B. is thriving in the foster home and is bonded with his foster parents, who have expressed willingness to adopt the children.

{¶34} K.B. deserves permanency, and adoption would benefit him. Clear and convincing evidence supports the trial court's conclusion that it is in K.B.'s best interest to grant permanent custody to the Agency.

{¶35} Appellant also argues the Agency did not make reasonable efforts to reunify appellant with K.B. because he was attempting to re-establish visitation when the Agency stopped visitations. We disagree with appellant's assertion that he "attempted to look for alternate visitations and affordable fees that would work with his schedule." Despite the Agency's efforts to help appellant establish visitation at P.F.C.S., appellant failed to make those efforts a priority. He did not produce a pay stub and it was all but impossible for workers to contact him because his phone was disconnected.

{¶36} Our review of the record allows us to further find the trial court's findings of fact are supported by clear and convincing evidence. Appellant has a significant anger problem which has resulted in criminal penalties and estrangement from his child. He was dilatory in completing anger management and individual counseling. Visitation with K.B. was stopped at appellant's request, and despite his belated attempts to restart visitation, he did not comply with the steps to do so.

---

[2] The record in the instant case establishes only that an attempt was made at kinship care but the effort was unsuccessful. Appellant does not suggest placement with a family member is an alternative in this case.

{¶37} Upon our review of the record in light of the pertinent statutory factors, we find the record contains clear and convincing evidence which supports the trial court's determination. The trial court did not err when it determined K.B. could not be placed with appellant in a reasonable time. The granting of permanent custody of K.B. to the Agency was made in consideration of the child's best interests and was not an abuse of discretion.

## CONCLUSION

{¶38} Appellant's sole assignment of error is overruled and the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J. and

Farmer, P.J.

Wise, J., concur.